IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IBIOLAJOSI AGNES AKINJIOLA,
*et al.*,

   *Plaintiffs*,

v.

ERIC H. HOLDER, JR., *et al.*,

   *Defendants*.

Civil Action No. ELH-12-2597

**MEMORANDUM OPINION**

Ibiolajosi Agnes Akinjiola and Hakeem Akanni Ademuyiwa, plaintiffs, filed suit against Attorney General Eric Holder, Jr. and Gregory Collett, District Director, United States Citizenship and Immigration Services ("USCIS"), in their official capacities, seeking judicial review of an Order of the Board of Immigration Appeals ("BIA"), pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. In particular, they challenge the BIA's decision affirming USCIS's denial of the I-130 visa petition filed by Akinjiola in 2007 on behalf of her husband, Ademuyiwa.[1]

The parties filed cross-motions for summary judgment, *see* ECF 19, 20, which have been fully briefed.[2] The Certified Administrative Record ("CAR") has also been submitted to the Court. No hearing is necessary to resolve the motions, *see* Local Rule 105.6, and, for the reasons that follow, I will deny plaintiffs' motion (ECF 19) and grant defendants' motion (ECF 20).

---

[1] This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

[2] In particular, plaintiffs filed a motion (ECF 19) and a supporting memorandum (ECF 19-1); defendants filed a cross-motion, consolidated with their opposition to plaintiffs' motion (ECF 20), and accompanied by a supporting memorandum (ECF 20-1); plaintiffs filed an "Opposition/Reply to Defendants' Cross-Motion for Summary Judgment" (ECF 23); and defendants filed a reply (ECF 27).

## FACTUAL BACKGROUND

On or about August 19, 2002, Ademuyiwa, a citizen of Nigeria, entered the United States through a B-2 visitor visa. CAR 127. Under the terms of his visa, Ademuyiwa was authorized to remain in the United States until February 18, 2003. *Id.* at 127. On Ademuyiwa's Nonimmigrant Visa Application, which he signed on July 26, 2002, Ademuyiwa indicated that he was married. CAR 13. His Supplemental Nonimmigrant Visa Application, filed concurrently, identified Tola Ademuyiwa as his spouse. *Id.* at 12. However, on September 21, 2002, approximately one month after Ademuyiwa's arrival, he married Linda Mills, a United States citizen. *Id.* at 157. Ademuyiwa and Mills were divorced less than fifteen months later, on December 3, 2003. *Id.* at 158.

Just over a month after his divorce, on January 10, 2004, Ademuyiwa married Bernerdeen McDowell, also a United States citizen. *Id.* at 322. On March 4, 2004, McDowell filed a Form I-130, Petition for Alien Relative for Ademuyiwa, seeking to establish Ademuyiwa as her spouse for visa purposes. *Id.* at 307. The I-130 petition indicated that Ademuyiwa had only been married once before, and identified Mills as his former spouse. *Id.* at 307. On the same date, Ademuyiwa filed a Form I-485, Application to Register Permanent Residence or Adjust Status. *Id.* at 382-85. The I-485 application reflected that Ademuyiwa has two children, both born in Nigeria. *Id.* at 383. On the Form G-325 for Biographic Information, which was filed in conjunction with the I-485 application, Ademuyiwa indicated that he had only been married once before, and he identified Mills as his former spouse. *Id.* at 386-88.

USCIS held an adjustment of status interview on June 1, 2004. CAR 76, 82. At the interview, Ademuyiwa submitted a sworn affidavit stating that he and a woman named Lanke Kuteyi have two children together but were never married. *Id.* at 107-08. USCIS subsequently

asked Ademuyiwa to submit a letter from the civil registry in Lagos, Nigeria to document that there was no record of a marriage between Ademuyiwa and Kuteyi. *Id.* at 83-84. It appears that, in response to this request, Ademuyiwa submitted a letter from the Odi-Olowo/Ojuwoye Local Government in Nigeria, which stated that Ademuyiwa had never entered into a marriage within its jurisdiction. *See id.* at 15, 82, 106.[3]

USCIS interviewed McDowell and Ademuyiwa separately, under oath, on October 18, 2004, in Sacramento, California. *Id.* at 273. On that same day, Ademuyiwa and McDowell signed affidavits containing their sworn statements. *Id.* at 257-61. According to the defendants, the two applicants were asked essentially the same questions. Def. Memo., ECF 20-1 at 3 (citing CAR at 273). On November 16, 2004, USCIS issued a Notice of Intent to Deny ("NOID"). CAR at 273-75. The NOID explained that there were material discrepancies in the couple's testimony regarding (1) their living arrangements; (2) the layout of Ademuyiwa's studio apartment; (3) the side of the bed on which McDowell slept; (4) whether McDowell used the debit card from their joint account; and (5) the last restaurant they dined at together. *Id.* at 273-74. The NOID also noted that when McDowell was shown a photo album compiled by

---

[3] On appeal to the BIA, plaintiffs' attorney provided a document purporting to be a Nigerian customary divorce that dissolved the marriage between Tola Ademuyiwa and Hakeem Ademuyiwa. CAR 486-88. The document is dated May 6, 2002, which is approximately two-and-a-half months prior to the date on Ademuyiwa's Supplemental Nonimmigrant Visa Application, on which he claimed to be married to Tola Ademuyiwa. *See id.* at 14. The government responded in its brief before the BIA, *id.* at 581:

> The Board of Immigration Appeals is generally precluded from considering new evidence on appeal. <u>Matter of Fedorenko</u>, 19 I&N Dec. 57, 74 (BIA 1984). This document should have been previously submitted, as a petition must be accompanied by all required documents. 8 C.F.R. § 103.2(b). Moreover, the documents newly submitted on appeal fail to comply with 8 C.F.R. §§ 287.6; 1287.6 regarding authentication of foreign documents.

Neither party has mentioned the existence of the document before this Court. Nor do the parties discuss whether this Court should or may consider it.

Ademuyiwa subsequent to the date of their wedding, McDowell was only able to identify Ademuyiwa and her own family members, and misidentified two people as Ademuyiwa's sisters. *Id.* at 274. According to the NOID, the testimony of McDowell and Ademuyiwa indicated that they (1) did not live together; (2) did not sleep together; (3) did not share finances; and (4) appeared to know little about each other. *Id*. at 274-75. The NOID provided McDowell thirty days to explain and submit evidence showing that the marriage was not a sham. *Id.* at 275.

On December 15, 2004, McDowell responded to the NOID by submitting a Declaration dated December 13, 2004, which attempted to explain her answers to the USCIS interview questions. *Id.* at 282-88. McDowell asked USCIS to reconsider previously submitted evidence, which included letters from doctors who described McDowell's memory loss and other medical problems; letters and affidavits from family and friends attesting to the validity of their marriage; a letter from a pastor stating that Ademuyiwa and McDowell attended his church for the previous few months; a motor vehicle credit application; wedding cards sent to Ademuyiwa's home; the couple's drivers' licenses, showing a common address at Ademuyiwa's home; mail addressed to McDowell at Ademuyiwa's home; and mail addressed to Ademuyiwa at Ademuyiwa's home. *Id*. at 276-78. She also provided bank statements and a license to operate a childcare facility issued to "Bener McDowell." *Id*. at 276, 289-300.

USCIS denied McDowell's spousal petition by letter dated February 12, 2005 ("2005 Denial Letter"). *Id*. at 250-53. In the 2005 Denial Letter, USCIS addressed McDowell's explanations for the divergent testimony as well as the documentary evidence and concluded that it was insufficient to rebut the finding that the marriage was contracted for the primary purpose of evading immigration laws. *Id*. McDowell did not appeal. About two years later, on March 5,

2007, McDowell and Ademuyiwa filed for divorce, which was effective on July 10, 2007. *Id*. at 160.

Nine days later, on July 19, 2007, Ademuyiwa married Akinjiola, a native of Nigeria and a naturalized United States citizen. *Id*. at 159. Soon after, on July 27, 2007, Akinjiola filed an I-130 petition on Ademuyiwa's behalf. *Id*. at 142-43. In support of the I-130 petition, Akinjiola submitted various documents purporting to support the legitimacy of her marriage to Ademuyiwa. *See id.* at 139-40. The I-130 petition indicated that Ademuyiwa has two children, both born in Nigeria. *Id*. at 143. It also indicated that Ademuyiwa had been married previously to Mills and McDowell. *Id*. at 142. On the same date, Ademuyiwa filed a new I-485 application to adjust his status. *Id*. at 142, 511.

USCIS interviewed Ademuyiwa and Akinjiola separately on January 23, 2008, and again on May 15, 2008. *Id*. at 55, 138, 164-68, 784-95. On September 8, 2010, USCIS issued a NOID, explaining that it intended to deny the petition because Akinjiola had failed to meet her burden of establishing that her marriage to Ademuyiwa was bona fide, and Akinjiola had failed to meet her burden of establishing Ademuyiwa's previous marriage to McDowell was not entered for the purpose of circumventing immigration laws. *Id*. at 140. The 2010 NOID reiterated the discrepancies that arose during the 2004 interviews of McDowell and Ademuyiwa, and the reasons that USCIS found McDowell's explanations for these discrepancies to be inadequate. *Id.* at 136-40. USCIS also reiterated its prior conclusion that the documentary evidence McDowell submitted in response to the 2004 NOID was insufficient to show that the marriage was bona fide. *Id*. at 136-38. The 2010 NOID noted discrepant testimony provided by Ademuyiwa and Akinjiola during their respective interviews, *id.* at 138-39, and explained that the documentary evidence Akinjiola had provided did not establish that the marriage to

Ademuyiwa was bona fide. *Id*. at 139-40. The NOID advised Akinjiola: "Your burden in these proceedings is not only to establish that you are engaged in a bona fide marriage with the beneficiary but to also establish that the beneficiary's previous marriage to Benerdeen McDowell was not entered into for the sole purpose of circumventing U.S. immigration laws." CAR 140 (emphasis in original). The NOID provided Akinjiola thirty days to rebut the conclusion that Akinjiola "ha[d] failed to meet that burden," CAR 140, and to submit supplemental evidence in support of the visa petition. *Id.* at 141.

On October 8, 2010, USCIS received Akinjiola's response to the NOID, which included additional documentary evidence regarding her marriage to Ademuyiwa. *Id*. at 127, 612-66. Akinjiola also submitted documents to support the validity of Ademuyiwa's marriage to McDowell, almost all of which were already contained in the USCIS record and had been previously submitted in response to the 2004 NOID. *Id.* at 129.

By letter dated March 3, 2011 ("2011 Denial Letter"), USCIS denied the spousal petition. *Id*. at 125-34. USCIS concluded that Section 204(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1154(c), precluded approval of the petition because Ademuyiwa had previously entered into a fraudulent marriage with McDowell for the purpose of circumventing immigration laws. CAR at 133. In so finding, USCIS addressed the evidence in the record, as well as the prior attorney's arguments as to why the Ademuyiwa-McDowell marriage was bona fide, and explained why the evidence failed to establish the legitimacy of the Ademuyiwa-McDowell marriage. *Id*. at 127-33. USCIS also observed that it appeared Ademuyiwa was "still married to Tola Ademuyiwa and was not free to marry [Akinjiola] on July 19, 2007." *Id.* at 133. Although the 2011 Denial Letter recognized that Akinjiola's "relationship with the beneficiary may be bona fide," USCIS said that "the beneficiary's previous sham marriage, as well as his

failure to disclose his marriage to Tola Ademuyiwa or produce a divorce decree from Ms. Ademuyiwa, preclude[d] USCIS from approving [her] visa petition." *Id*. The 2011 Denial Letter concluded: "[T]he records of USCIS reflect the beneficiary previously entered into a 'sham' marriage with Benerdeen McDowell and concealed his first marriage to Tola Ademuyiwa for the sole purpose of circumventing the immigration laws." *Id.* at 134.

Akinjiola appealed USCIS's denial to the BIA. *Id.* at 593-605. On June 6, 2012, the BIA affirmed USCIS's decision, "for the reasons stated therein." *Id*. at 578. In particular, the BIA found that the record supported a finding that Ademuyiwa's prior marriage to McDowell was entered into for the purpose of evading immigration laws. *Id*. The BIA noted that there were several discrepancies evident from the interviews of Ademuyiwa and McDowell, they did not live together, and their explanations were insufficient to explain their living arrangements. *Id.*

Additional facts are included in the Discussion.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted), *cert. denied*, 540 U.S. 822 (2003).

The APA provides the statutory basis for a court to review a final agency action. *See* 5 U.S.C. § 702; *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010). Notably, "claims brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record . . . ." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007) (citing *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner*, 802 F. Supp. 1325, 1332 (D. Md. 1991), *aff'd*, 1992 WL 180138, 1992 U.S. App. LEXIS 17466 (4th Cir. July 29, 1992)). Thus, "such claims are properly decided on summary judgment." *Audubon Naturalist*, 524 F. Supp. 2d at 659; *see* 10B WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2733 (3d ed. 2007). In this context, "review of the administrative record is primarily a legal question." *Citizens for the Scenic Severn River Bridge*, 802 F. Supp. at 1332.

"The APA provides that a reviewing court is bound to 'hold unlawful and set aside agency action' for certain specified reasons, including whenever the challenged act is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Friends of Back Bay v. U.S. Army Corps of Engineers*, 681 F.3d 581, 586-87 (4th Cir. 2012) (quoting 5 U.S.C. § 706(2)(A)); *see United States v. Bean*, 537 U.S. 71, 77 (2002). Review under the APA is highly deferential, however, and the agency action enjoys a presumption of validity. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citing *Natural Res. Def. Council, Inc. v. EPA,* 16 F.3d 1395, 1400 (4th Cir. 1993)).

In assessing an agency decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Notably, "[t]he

scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). "Deference is due where the agency has examined the relevant data and provided an explanation of its decision that includes 'a rational connection between the facts found and the choice made.'" *Ohio Valley Envtl. Coal.*, 556 F.3d at 192 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Thus, "[t]he agency action will stand if the record reveals a rational basis for the decision." *Oddo v. Reno*, 175 F.3d 1015, 1999 WL 170173, at *2 (4th Cir. Mar. 29, 1999) (unreported) (citing *Trinity Am. Corp. v. U.S. EPA*, 150 F.3d 389, 395 (4th Cir. 1998); *Clevepak Corp. v. U.S. EPA*, 708 F.2d 137, 141 (4th Cir. 1983)).

Plaintiffs contend that the agency's decision is subject to review under the "substantial evidence" standard set forth in 5 U.S.C. § 706(2)(E), rather than the "arbitrary and capricious" standard. Pla. Reply, ECF 23 at 3-5. "Under the substantial evidence standard, an agency ruling must be upheld if there is substantial evidence to support it." *James City Cnty. v. EPA,* 12 F.3d 1330, 1338 n.4 (4th Cir. 1993). In this context, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *United Seniors Ass'n, Inc. v. Soc. Sec. Admin.*, 423 F.3d 397, 404 (4th Cir. 2005) (internal citations and quotation marks omitted); *see also Washington Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union*, 818 F. Supp. 2d 888, 897 (D. Md. 2011). The substantial evidence standard "applies after an agency has conducted formal agency proceedings pursuant to §§ 556 and 557." *Wilson v. Office of Civilian Health & Med. Programs of Uniformed Servs. (CHAMPUS), a Subdivision of Dep't of Def. of U.S.*, 65 F.3d 361, 364 n.3 (4th Cir. 1995).

As defendants observe, the Fourth Circuit has reviewed a determination of the Immigration and Nationality Service ("INS"),[4] finding an alien ineligible for a visa under 8 U.S.C. § 1154(c), based on the arbitrary and capricious standard of review. *See Oddo*, 1999 WL 170173; *see also Asamoah v. Napolitano*, No. RDB-10-470, 2010 WL 5095353 (D. Md. Dec. 8, 2010) (reviewing a USCIS denial of an I-130 petition under the arbitrary and capricious standard of review); *Okolie v. Collett*, No. GLR-12-663, 2012 WL 5363472 (D. Md. Oct. 26, 2012) (same). In any event, the Fourth Circuit has explained that, "[w]ith respect to review of factfindings, there is no meaningful difference between [the arbitrary and capricious] standard and the substantial evidence standard." *GTE S., Inc. v. Morrison*, 199 F.3d 733, 745 n.5 (4th Cir. 1999).

Indeed, many courts have described the difference between the substantial evidence standard and the arbitrary and capricious standard as "largely semantic." *Washington Metro. Area Transit Auth.*, 818 F. Supp. 2d at 897 (citing *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984); *Amusement & Music Operators Ass'n v. Copyright Royalty Tribunal,* 676 F.2d 1144, 1151 (7th Cir. 1982)); *see also Wilson*, 65 F.3d at 364 n.3 (declining to invoke substantial evidence review, and commenting that "the applicability of [the substantial evidence] standard matters little, as we have recognized 'it is widely held that there is now little difference in the application of the [substantial evidence and the arbitrary and capricious] standards'") (quoting *James City Cnty.,* 12 F.3d at 1338 n.4 ); *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of*

---

[4] The INS was abolished in 2003 pursuant to the Homeland Security Act of 2002, PL 107-296, 116 Stat. 2135, and the newly created Department of Homeland Security ("DHS") assumed the responsibilities of the former agency. *See Pastora v. Holder*, No. 12-2095, 2013 WL 6487378, at *1 n.1 (4th Cir. Dec. 11, 2013). USCIS, a division within DHS, was tasked with the federal government's immigration service functions.

*Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984) (Scalia, J.) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense . . . ." (emphasis in original)).[5]

## DISCUSSION[6]

The INA provides that a U.S. citizen may file an I-130 visa petition to classify his or her spouse as an "immediate relative." 8 U.S.C. § 1154. The petitioner bears the burden of establishing eligibility for the benefit sought.[7] *Matter of Phillis*, 15 I&N Dec. 385, 386 (BIA 1975). Approval of the petition "renders the alien spouse eligible for immigrant status." *Pacheco Pereira v. Immigration and Naturalization Service*, 342 F.2d 422, 423 (1st Cir. 1965).

---

[5] In any event, under the arbitrary and capricious standard or the substantial evidence standard, the outcome here would be the same.

[6] Because BIA affirmed the denial for the reasons set forth in USCIS's 2011 Denial Letter, this Court reviews both the BIA and USCIS decisions. *See Zemeka v. Holder*, -- F. Supp. 2d ---, 2013 WL 6085633, at *3 (D.D.C. Nov. 20, 2013) (explaining that because the BIA's decision affirming the denial of the I-130 petition adopted the rationale set forth in USCIS's decision, both were subject to review); *accord Koffi v. Holder*, No. 3:09CV2102, 2011 WL 2896049, at *7 n.2 (D. Conn. July 18, 2011), *aff'd*, 487 Fed. Appx. 658 (2d Cir. 2012); *Rivera v. Patterson*, No. 10-23556-CIV, 2011 WL 5525356, at *3 n.4 (S.D. Fla. Nov. 14, 2011); *cf. Tolesa v. Holder*, 353 Fed. Appx. 815, 818 (4th Cir. 2009) ("While ordinarily we review only the decision of the BIA, when the BIA adopts the reasoning of the [Immigration Judge] and summarily affirms, we review the [Immigration Judge's] decision." (citing *Gandarillas-Zambrana v. BIA,* 44 F.3d 1251, 1255 (4th Cir. 1995))).

[7] As a preliminary matter, defendants urge dismissal of Ademuyiwa's claim on the ground that he lacks standing. Def. Memo., ECF 20-1 at 9. Defendants contend that only Akinjiola, petitioner, and not Ademuyiwa, the beneficiary of the visa petition, may seek judicial review of an administrative decision denying a visa application. *Id.* at 9. In light of the holding on the merits in defendants' favor, I need not resolve the question of Ademuyiwa's standing. *See City of Charleston v. Pub. Serv. Comm'n of W. Virginia*, 57 F.3d 385, 390 & n.5 (4th Cir. 1995). In any event, such a challenge would likely be unavailing. *See Taneja v. Smith*, 795 F.2d 355, 358 n.7 (4th Cir. 1986); *Oddo v. Reno*, 17 F. Supp. 2d 529, 531 (E.D. Va. 1998); *Sanchez-Trujillo v. INS*, 620 F. Supp. 1361, 1363 (W.D.N.C. 1985).

If an alien is determined to have previously entered into a marriage for the purpose of evading immigration laws, INA § 204(c) prohibits approval of a subsequent visa petition. 8 U.S.C. § 1154(c). Section 204(c), 8 U.S.C. § 1154(c), states:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*See also* 8 C.F.R. § 204.2(a)(1)(ii) (stating that INA § 204(c) "prohibits the approval of a visa petition filed on behalf of an alien who has attempted . . . to enter into a marriage for the purpose of evading the immigration laws").

Therefore, engaging in marriage fraud forecloses the grant of a visa petition, even if the later marriage is unquestionably bona fide. *Diaz v. U.S. Citizenship & Immigration Servs.*, 499 Fed. Appx. 853, 856 (11th Cir. 2012) (citing *Matter of Kahy*, 19 I&N Dec. 803, 805 n.2 (BIA 1988)). When determining if a marriage was fraudulent, "USCIS ordinarily cannot give conclusive effect to determinations made in prior proceedings, but should make an independent conclusion based on the evidence of the record." *Id.* (citing *Matter of Tawfik*, 20 I&N Dec. 166, 168 (BIA 1990)); *see also Zemeka*, 2013 WL 6085633, at *5; *Wolter v. Keisler*, No. CIVS07-241, 2007 WL 404807, at *4 (E.D. Cal. Nov. 15, 2007). This is precisely what the USCIS and BIA did here.

"Central to the question of marital validity is whether the couple intended to establish a life together, which is evidenced by their actions after the union." *Okolie*, 2012 WL 5363472, at *4 (citing *Matter of Patel*, 19 I&N Dec. 774, 784-85 (BIA 1988)); *Matter of Laureano*, 19 I&N Dec. 1, at *2-3 (BIA 1983)). A finding of marriage fraud must be supported by "substantial and

probative" evidence. 8 C.F.R. § 204.2(a)(1)(ii); *Matter of Tawfik*, 20 I&N Dec. at 167; *Zemeka*, 2013 WL 6085633, at *5.

Plaintiffs set forth a number of overlapping arguments in support of their challenge to the finding of marriage fraud by BIA and USCIS.[8] Their contentions are unavailing. The record reflects that USCIS's 2011 Denial Letter provided a reasoned explanation for the agency's findings; it rationally concluded that the evidence Akinjiola submitted to support the validity of the Ademuyiwa-McDowell marriage was outweighed by the agency's evidence of fraud.

Plaintiffs take issue with the conclusions that USCIS drew in its 2011 Denial Letter regarding the testimony that Ademuyiwa and McDowell provided during their 2004 USCIS interviews. Insisting that Ademuyiwa and McDowell did not provide inconsistent testimony, plaintiffs focus on the following topics: (1) the extent to which whether the two resided together; (2) their reasons for living apart; (3) the frequency of their visits with each other; (4) what side of the bed each slept on; and (5) McDowell's use of a debit card account that was purportedly shared. Pla. Memo., ECF 19-1 at 7-8. A review of the record reflects that there were important

---

[8] The parties seem to dispute the reasons proffered for USCIS's 2011 denial. *See* Pla. Reply, ECF 23 at 2. Defendants explain that USCIS denied the petition because "(1) Akinjiola had failed to show that her marriage to Ademuyiwa was bona fide and (2) 8 U.S.C. § 1154(c) barred USCIS from approving the petition because Ademuyiwa had married McDowell for immigration purposes." ECF 20-1 at 5. In their Opposition/Reply, plaintiffs "disagree," and assert that "approval of the Akinjiola petition was precluded because of Ademuyiwa's alleged prior sham marriage and failure to disclose an alleged prior marriage." ECF 23 at 2. Defendants responded: "USCIS questioned whether Ademuyiwa was lawfully married to Akinjiola because it appeared that he may still be married to a woman in Nigeria. (*See* CAR 133.) USCIS concluded that Akinjiola, therefore, has 'no qualifying relationship with the beneficiary through which to file a Petition for Alien Relative on his behalf.' (*Id.*)" Def. Reply, ECF 27 at 3 n.2. Otherwise, Ademuyiwa's alleged marriage to Tola Ademuyiwa is not an issue that appears in the parties' submissions before this Court. However, the apparent dispute regarding the grounds for the denial is not material. For the reasons discussed herein, the finding that the Ademuyiwa-McDowell marriage was a sham is independently sufficient to deny the visa petition.

discrepancies in the testimony of Ademuyiwa and McDowell during their respective interviews, in turn supporting the conclusion that their marriage was fraudulent.

Ademuyiwa testified that he and McDowell lived together seven days a week. CAR 136, 260. Yet, McDowell testified that she and Ademuyiwa lived together three days a week at his apartment, and Ademuyiwa visited her residence "probably once a week" for "an hour or so." *Id.* at 136, 257. McDowell offered a letter from Emily Huerta, the manager of Ademuyiwa's apartment complex, stating that McDowell was not approved to be added to Ademuyiwa's lease due to her bad credit, and therefore she was not allowed to live with Ademuyiwa. *Id.* at 128. USCIS considered the letter and found Huerta's explanation to be "highly implausible," observing that, "[e]ven if Ms. McDowell could not be added to the lease due to her bad credit, she could have been added as a resident." *Id.* at 130. Further, the 2011 Denial Letter noted that Huerta's letter was not notarized, and that plaintiffs had failed to produce evidence of McDowell's poor credit. *Id.* at 128.

Ademuyiwa and McDowell also provided differing accounts with respect to the side of the bed on which each slept. *Id.* And, Ademuyiwa and McDowell testified inconsistently with regard to McDowell's use of the debit card account. McDowell was asked, "Do you ever use that debit card account that you share with your husband?" *Id.* She responded, "No." *Id.* However, when Ademuyiwa was asked whether McDowell used the debit card account, he responded, "Yes." *Id.* McDowell also claimed that she did not have the debit card, whereas Ademuyiwa asserted that McDowell kept it with her. *Id.* at 137. Further, the testimony provided by McDowell and Ademuyiwa during their respective interviews indicated that they lacked basic knowledge about each other. When the interviewing officer asked McDowell to identify the individuals in a photo album that McDowell and Ademuyiwa produced for their interviews,

McDowell was only able to identify Ademuyiwa and her own family members. *Id.* at 128, 137. As noted, McDowell incorrectly identified two individuals as Ademuyiwa's sisters. *Id.*

Plaintiffs also contest the conclusions drawn from the 2004 interview testimony on the grounds that USCIS "failed to credit the consistent answers given by Ademuyiwa and his prior spouse," and did not ask Ademuyiwa and McDowell an equal number of questions. Pla. Memo., ECF 19-1 at 8. However, the 2011 Denial Letter demonstrates that USCIS considered both the consistent answers and the inconsistent answers. *See* CAR 128. That Ademuyiwa and McDowell were not asked the exact same number of questions is not dispositive. For instance, the USCIS officer had no reason to question Ademuyiwa about the frequency of his visits to McDowell because, by his account, the couple resided together full-time. *See id.* at 260. Similarly, it would not be probative of the bona fides of the marriage to ask Ademuyiwa questions about the layout of his own studio. Such questions of McDowell were probative, however, given her claim that she resided with Ademuyiwa three times a week. *Compare* CAR 257-59 *with* CAR 260-61.

In response to the 2010 NOID, plaintiffs' prior attorney attempted to explain why the testimony of Ademuyiwa and McDowell was not indicative of marriage fraud. *Id.* 127-29. USCIS considered these explanations and provided well-reasoned responses as to why the explanations failed to establish the consistency of the testimony. *See id.* at 128-29.

Taken together, the discrepancies in the testimony provided a rational basis to support the finding of marriage fraud. *See Asamoah*, 2010 WL 5095353, at *4 (finding that USCIS had a rational basis for denying a visa petition where documents indicated the couple did not live together, provided contradictory answers regarding their marriage and life together, and lacked

basic knowledge about each other); *see also Matter of Phillis*, 15 I&N Dec. at 387 (inconsistent statements by petitioner and beneficiary supported inference of marriage fraud).

In addition, plaintiffs argue that there is no "substantial and probative evidence" that Ademuyiwa and McDowell entered into marriage for the purpose of evading immigration laws, and the denial is therefore inconsistent with BIA precedent. Pla. Memo., ECF 19-1 at 13-17; Pla. Reply, ECF 23 at 7-8. Plaintiffs point to evidence relied on in other cases to reach a finding of marriage fraud and suggest that the same quantum of evidence is not present here. Therefore, they insist that the evidence did not amount to substantial evidence of marriage fraud. Pla. Memo., ECF 19-1 at 13-17; Pla. Reply, ECF 23 at 7-8.

The evidence adduced in an unrelated case does not compel the finding that the Ademuyiwa-McDowell marriage was bona fide. "There is no set formula to be applied in determining whether a marriage was entered into in good faith." *Damon v. Ashcroft*, 360 F.3d 1084, 1089 (9th Cir. 2004). Indeed, USCIS may rely on many forms of evidence to reach a finding of a fraudulent marriage. *See Matter of Soriano*, 19 I&N Dec. 764, 766 (BIA 1988); *Matter of Phillis*, 15 I&N Dec. at 387. Moreover, as USCIS discussed in its 2011 Denial Letter, much of the documentary evidence that Akinjiola submitted in an effort to demonstrate the legitimacy of the Ademuyiwa-McDowell marriage is irrelevant to the issue of the validity of Ademuyiwa's marriage to McDowell. CAR 129-32. For instance, USCIS explained that letters describing McDowell's psychiatric treatment and a license issued to "Bener McDowell" to operate a Family Child Care Home provided no details as to the legitimacy of the Ademuyiwa-McDowell marriage. *Id*.

Further, plaintiffs contend that the agency decision lacked a rational basis because "USCIS and BIA did not thoroughly consider all of the evidence on the record before making the

sham marriage conclusion." Pla. Reply, ECF 23 at 6-7. They assert that "while the USCIS discussed the documents to establish the bona fides of the prior marriage, USCIS did not specifically state that it reached a sham marriage finding based on the documentary evidence and based its decision on perceived inconsistencies in Ademuyiwa and his prior spouse's interview testimonies." Pla. Reply, ECF 23 at 9. According to plaintiffs, "the BIA . . . did not mention anything regarding the documentary evidence submitted in support of the prior marriage." *Id*. Plaintiffs also take issue with the agency's purported failure to consider two letters from Permanente Medical Group, Inc. describing McDowell's psychiatric treatment and an affidavit from McDowell dated March 31, 2011, explaining the demise of her marriage to Ademuyiwa. Pla. Memo., ECF 19-1 at 12-13; Pla. Reply, ECF 23 at 6-7.

In regard to the affidavit, defendants point out that it postdates USCIS's decision denying Akinjiola's petition, which was issued March 3, 2011. CAR 464-65. Thus, the affidavit was not part of the record before USCIS at the relevant time. Moreover, the BIA could not have properly considered the affidavit because its review is limited to the record that USCIS considered. 8 C.F.R. § 1003.1(d)(3)(iv). With respect to McDowell's psychiatric treatment, the 2011 Denial Letter directly contradicts plaintiffs' assertion that this evidence was ignored. In relevant part, the 2011 Denial Letter states that the letters from Permanente Medical Group, Inc. "fail to state any information pertaining to her marriage to the beneficiary, and therefore fail to establish she was engaged in a bona fide marriage with the beneficiary." CAR 130.

BIA's decision explained that it reviewed the 2011 NOID and USCIS's subsequent denial and "affirm[ed] the decision of the District Director for the reasons stated therein." *Id.* at 578. Moreover, BIA made clear that it had "reviewed the record of proceedings, including the March 3, 2011, decision of the District Director denying the visa petition, the September 8, 2010, Notice

of Intent to Deny (NOID), the petitioner's response to the NOID, and the petitioner's contentions on appeal." *Id.* at 578. Therefore, this argument is a nonstarter.

Before this Court, plaintiffs set forth a number of new explanations to justify the testimony of McDowell and Ademuyiwa. *See* Pla. Memo., ECF 19-1 at 8-12. However, it is not the task of this Court to determine whether it is possible to reconcile the statements in light of these new explanations. Nor may this Court substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n*, *supra*, 463 U.S. at 43. Rather, the question for this Court is whether the record reveals a rational basis for the agency's decision.

In sum, the 2011 Denial Letter reflects that USCIS considered all of the evidence and concluded: "Ms. McDowell and [Ademuyiwa] entered into a sham marriage for the sole purpose of circumventing immigration laws of the United States." CAR 133. Both USCIS and BIA provided a thorough explanation as to why substantial and probative evidence supported the finding that McDowell and Ademuyiwa did not intend to establish a life together, which displayed a rational connection to the findings of fact. The determination of marriage fraud had a rational basis, as it was premised on (1) discrepant testimony of Ademuyiwa and McDowell regarding, *inter alia*, the couple's living arrangements; and (2) "the determination that the documentary evidence in the record either failed to support or undermined the claim that the Ademuyiwa-McDowell marriage was bona fide." Def. Reply, ECF 27 at 6. Accordingly, USCIS and the BIA did not act in an arbitrary and capricious manner by determining that "McDowell and the beneficiary entered into a sham marriage for the sole purpose of circumventing immigration laws of the United States." CAR 133, 578.

## CONCLUSION

Because the denial of the visa petition was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," it will not be disturbed. Plaintiffs' motion for summary judgment will be denied, and defendants' cross-motion for summary judgment will be granted. An Order consistent with this opinion follows.

Date: February 14, 2014

/s/
Ellen Lipton Hollander
United States District Judge